IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MELVIA MORRIS,  No. 2:15-cv-2718-CMK

    Plaintiff,

  vs.  MEMORANDUM OPINION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

                                /

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 19), and defendant's cross-motion for summary judgment (Doc. 20).

**I. PROCEDURAL HISTORY**

Plaintiff applied for social security benefits on January 31, 2012, alleging an onset of disability on April 15, 2003, due to disabilities including mental (Certified administrative record ("CAR") 181-83, 219-24). Plaintiff's claim was denied initially and upon reconsideration.

Plaintiff requested an administrative hearing, which was held on February 25, 2014, before Administrative Law Judge ("ALJ") L. Kalei Fong. In a July 1, 2014, decision, the ALJ concluded that plaintiff is not disabled[1] based on the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2006.

    2.    The claimant has not engaged in substantial gainful activity since April 15, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    3.    The claimant has the following severe impairments: anxiety, right arm pain and lumbago (20 CFR 404.1520(c) and 416.920(c)).

    4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |     | the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
|---|---|---|
|   | 5.  | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can perform simple, repetitive tasks and no detailed or complex tasks. She can maintain concentration with simple, repetitive tasks and have interaction with coworkers and occasional public interaction. She can adapt to hazards and danger and is able to perform in a non-competitive work environment with no fast-paced work. |
|   | 6.  | The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). |
|   | 7.  | The claimant was born on February 18, 1963 and was 40 years old, which is defined as an individual approaching advanced age, on the alleged disability onset date. (20 CFR 404.1563 and 416.963). |
|   | 8.  | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). |
|   | 9.  | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
|   | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
|   | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

(CAR 19-28). After the Appeals Council declined review on December 22, 2015, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is

more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

Plaintiff argues the ALJ erred in three ways: 1) the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's treating physician's opinion; 2) the ALJ failed to develop the record; and 3) the ALJ failed to discuss all of plaintiff's impairments. Plaintiff also argues the appeals council erroneously refused to consider newly discovered evidence.

**A.  Medical Opinion**

Plaintiff argues the ALJ erred in rejecting the opinion of her treating physician, Dr. Cleveland. She contends that the ALJ found Dr. Cleveland's opinion to be consistent with the medical records, but then gave it little weight in favor of the reviewing doctors' opinions. Defendant counters that plaintiff's argument is inaccurate, that the ALJ adopted the bulk of Dr. Cleveland's opinion only discounting the single aspect of her limited ability to interact with the

public, coworkers and supervisors. Even that was minimized in the hypothetical to the vocational expert, wherein the ALJ only eliminated the limitations in interacting with supervisors and co-workers, but accepted the limitation of interacting with the public.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to Dr. Cleveland's opinion, the ALJ summarized the treatment provided as follows:

> On January 17, 2014, the claimant was seen at Sacramento Community Clinic for a well woman pap smear. Examination was normal and there were no complaints. Diagnosis was routine gynecological examination, hypertension NOS and lumbago (Ex. 12F/14, 15). The claimant saw Aaron Cleveland, M.D., on January 21, 2014. Dr. Cleveland noted that the claimant was doing well, stable and much better; her husband was much happier. She had some paperwork to fill out. The claimant stated that she never took the medication as she felt it was tampered (Ex. 12F/8). Dr. Cleveland filled out a Medical Source Statement – Mental dated February 26, 2014. Dr. Cleveland opined that the claimant had a fair ability for understanding and remembering detailed or complex instructions and very short and simple instructions. With regard to sustained concentration and task persistence, the claimant has a poor ability to work without supervision but a fair ability to carry out instructions and attend and concentrate. For social interaction, the claimant has a poor ability to interact with public, coworkers and supervisors and she has a fair ability to adapt to changes in the workplace, be aware of normal hazards and react appropriately and use public transportation to travel to unfamiliar places (Ex. 14F).

(CAR 25).

The ALJ also summarized the reviewing physician's opinion as follows:

> Reviewing psychiatrists Dara Goosby, PsyD, and M.D., similarly stated that during psychiatric examination, the claimant was mostly within normal limits with some trouble following 3-step commands. Without DA&A, her psychiatric impairment is non-severe from the alleged onset date through the date last insured (Ex. 1A/4). Reviewing psychiatrist, M. McCall, M.D., stated that after review of the medical evidence, the psychiatric limitations would be adopted. Dr. McCall opined that the claimant is able to do simple, repetitive tasks with limited public contact, especially if she works on her recovery and obtains mental health treatment (Ex. 5A/8).

(CAR 26).

6

The ALJ then found:

> Based on the above evidence, it is found that the claimant's subjective complaints and allegations regarding her functional limitations are not fully credible. Although the claimant states that she is unable to work due to "mental" there are very minimal treatment records to support that allegation. On September 9, 2012, it was noted that despite her illness, the claimant stated that she was able to perform activities of daily living and was able to work. She reported that she was not frustrated, anxious or depressed about it. She reported that she drinks excessively (Ex. 19F/23, 24). There are no treatment records to support the claimant's allegations that she has anger issues and has disputes at doctors' offices. In fact, the claimant was often noted to be cooperative. The undersigned notes that during the hearing, the claimant yawned, acted bored and was disrespectful.

(CAR 26).

After discussing the medical records and opinions, the ALJ determined:

> Drs. Goosby and McCall's opinions are given significant weight because they are consistent with the discussed progress notes. Dr. McCall's opinion is given greater weight because it gives the claimant the benefit of doubt and limits her to unskilled work with limited public contact. Ms. Ly-Yang's statements are given little weight because her opinions contradict each other. In February 2014, she stated that she has known the claimant since August 2012 (Ex. 15F). In May 2012, she stated that the claimant has been her patient since 2010 (Ex. 3F). Further, her opinions are not supported by her own treatment notes and they are not consistent with the medical evidence of record. The opinion of treating physician, Dr. Cleveland is consistent with the medical record. Further, it supports the residual functional capacity above. However, little weight is given to Dr. Cleveland's finding that the claimant has a poor ability to interact with the public, coworkers and supervisors.

(CAR 26).

Plaintiff contends that the ALJ rejected Dr. Cleveland's opinion without providing proper reasons for so doing. The undersigned does not find that argument accurate. The ALJ only rejected one portion of Dr. Cleveland's opinion, that plaintiff had a poor ability to interact with the public, coworkers and supervisors. As defendant points out, the ALJ limited that rejection further in his RFC and hypothetical to plaintiff's ability to interact with coworkers and supervisor. As set forth above, the ALJ found a discrepancy between the opinion that plaintiff was unable to interact with others and her ability to cooperate with the doctors. The ALJ

7

specifically found "there are no treatment records to support the claimant's allegations that she has anger issues and has disputes at doctors' offices. In fact, the claimant was often noted to be cooperative." (CAR 26). This finding is consistent with the records as there is nothing in the treatment notes from Dr. Cleveland to support his finding that she is unable to interact with coworkers and supervisors. Rather, he noted several times that she was cooperative and attentive. (CAR 339, 403). The ALJ also supported his determination based on Dr. McCall and Goosby's opinions, which relied on the consultative examination finding plaintiff to have mild to moderate limitations. There were no severe limitations noted. (CAR 511-18). The undersigned finds the ALJ's reasons sufficient and supported by the record.

### B. Record Development

Plaintiff next argues the ALJ erred by failing to develop the record. Specifically, plaintiff argues that the ALJ relied on the opinions of Drs. McCall and Goosby, but that the reviewing doctors, as well as the consultative examiner upon whose findings the reviewing doctors relied, did not have treating records available to review. Plaintiff contends the ALJ had a duty to provide plaintiff's treating records to the consultative examiner, but failed to do so. Defendant counters that plaintiff fails to meet the standard as to when further development of the record is required. Defendant argues that the reviewing physicians had treatment notes in the record as of the time the opinions were rendered. To the extent plaintiff argues the reviewing doctors did not have Dr. Cleveland's medical source statement at the time, defendant contends plaintiff's argument fails in that she does not set forth what in Dr. Cleveland's check the box form would have altered the review. Finally, defendant argues that the lack of records review by the consultative examiner is immaterial as that opinion was not relied upon by the ALJ.

The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously

and conscientiously probe into, inquire of, and explore for all the relevant facts." <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. <u>See</u> <u>Tonapetyan</u>, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. <u>See id.</u> (citing <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998)).

    The undersigned finds defendant's arguments persuasive. First, plaintiff fails to identify any ambiguous evidence or inadequacy in the record to trigger the ALJ's duty to develop the record further. In addition, there is no indication in the record that the reviewing doctors did not have all available records at the time the opinions were rendered. Plaintiff does not cite to any particular portion of the record which the reviewing doctors should have had that would render the opinions incomplete or would have any likely impact on the opinions. To the extent none of the reviewing or consulting doctors had Dr. Cleveland's medical source statement, plaintiff again fails to set forth how having that form would have changed the reviewing doctor's assessment. Similarly, plaintiff fails to specify what records would have changed the consultative examiner's opinion. The undersigned further notes that Plaintiff was represented by counsel during these proceedings, thus did not trigger the heightened duty for a pro se applicant. The ALJ also left the record open for a couple of weeks following the hearing for plaintiff and her attorney to supplement the record with additional medical records. Those records were received and reviewed by the ALJ. The undersigned finds no error in the development of the record.

    **C. Failure to Include All Impairments**

    Next, plaintiff contends the ALJ erred by not discussing and including all of her impairments, including bipolar, depressive, psychotic and personality disorders, despite treating medical opinions. Defendant counters that plaintiff's contention that she had these severe

impairments is unsupported by any citation to the record. In addition, defendant contends that while the record shows the diagnosis of these disorders, there is no evidence in the record that any of the disorders resulted in any limitations, nor did plaintiff or her attorney raise these impairments at the hearing. Finally, defendant argues that if the ALJ erred in failing to address any of these disorders, failure to do so was harmless error.

The undersigned interprets this argument as a failure of the ALJ to include all of plaintiff's disorders as severe impairments in the Step Two analysis. In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

As defendant argues, a diagnosis of a disorder does not equate to a finding of a severe impairment. Plaintiff fails to identify, and the undersigned's review of the record fails to

---

[2] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

show, what limitations she has relating to these disorders. The only limitations identified in the medical records, regardless of the specific diagnosis, were addressed by the ALJ. Plaintiff fails in her motion to identify any additional limitations related to these diagnoses, nor has the undersigned found any supported by the record. Notably, at Step Two of the analysis, the burden is on plaintiff to establish the severity of her impairments.

In addition, defendant's argument that any error by the ALJ not addressing the alleged impairments was harmless is also persuasive. The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. In <u>Stout v. Commissioner of Social Security</u>, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless "if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Id.</u> at 1056; see also <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 885 (9th Cir. 2006) (citing <u>Stout</u>, 454 F.3d at 1056). The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006). Where, as perhaps here, the ALJ errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the <u>Stout</u> standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred.

As stated above, plaintiff fails to identify any limitations not addressed by the ALJ related to the additional diagnoses she sets forth. Nor has the undersigned found any support in the record for any additional limitations the ALJ should have addressed. Thus, the undersigned finds any error the ALJ may have made in not specifically addressing plaintiff's additional diagnoses of bipolar, depressive, psychotic and personality disorders, would be harmless as no reasonable ALJ could have reached a different ultimate conclusion as to plaintiff's abilities had these additional diagnoses been specifically addressed at Step Two.

| | |
|---|---|
|1| **D. New Evidence** |
|2| Finally, plaintiff contends the Appeals Council erred in refusing to look at newly |
|3| discovered evidence. She argues that the medical records from the Sacramento County Jail were |
|4| not received until after the ALJ issued the decision. The records noted a history of PTSD, acute |
|5| stress disorder, personality disorder NOS, antisocial and paranoid traits and suicidal ideation. As |
|6| these records were not before the ALJ, plaintiff submits this matter should be remanded for the |
|7| ALJ to consider. Defendant counters that the medical records from the Jail would have no effect |
|8| on the outcome of the ALJ's decision. Specifically, the defendant notes that the findings on |
|9| mental status examinations reflected no limitations and would not have changed the ALJ's |
|10| decision. |
|11| A case may be remanded to the agency for the consideration of new evidence if |
|12| the evidence is material and good cause exists for the absence of the evidence from the prior |
|13| record. See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. |
|14| 1987) (citing 42 U.S.C. § 405(g)). In order for new evidence to be "material," the court must |
|15| find that, had the agency considered this evidence, the decision might have been different. See |
|16| Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990). The court need only find a reasonable |
|17| possibility that the new evidence would have changed the outcome of the case. See Booz v. |
|18| Secretary of Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984). The new |
|19| evidence, however, must be probative of the claimant's condition as it existed at or before the |
|20| time of the disability hearing. See Sanchez 812 F.2d at 511 (citing 42 U.S.C. § 416(i)(2)(G)). In |
|21| Sanchez, the court concluded that the new evidence in question was not material because it |
|22| indicated "at most, mental deterioration after the hearing, which would be material to a new |
|23| application, but not probative of his condition at the hearing." Id. at 512 (citing Ward v. |
|24| Schweiker, 686 F.2d 762, 765-66 (9th Cir. 1982)). |
|25| Here, the undersigned finds nothing in the medical records from the jail that |
|26| would reasonably expect to have changed the outcome of the case. The diagnoses set forth by |

plaintiff and contained in the records are not materially different from the diagnoses set forth by plaintiff's other providers. As defendant notes, there are no limitations identified in the records. Thus, the undersigned does not find the new evidence to be material.

### IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 19) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 20) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 19, 2017

/s/ Craig M. Kellison
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE